Would you please call the first case on the court's docket? Yes, sir. Your Honor, this case on document 2-17-0585, we are the field, Thompson County, College of DuPage, defendant's attorney. If I may be asked, the plaintiff's attorney, Mr. Nicholas, the prosecutor's attorney will be acting as the defendant's attorney. Mr. Michael, please proceed. Thank you. Thompson County, you may proceed. May it please the court. Good morning. My name is Nick Napierstow, and I represent the plaintiff in this matter, Mr. Vito Basile. This appeal presents two main issues for your consideration this morning. The first is whether a ordinary premises case is immunized by Section 3-108 of the Tory Immunity Act simply because it occurs within a classroom. And the second is whether a plaintiff has met its limited burden of production with regards to the question of notice in response to defendant's Celotex motion. Was the trial court's ruling only because it happened in a classroom? I mean, was that the sole basis to invoke 3-108? As far as I could tell, that was the only fact established in the record that was presented by the defendant on that motion for summary judgment. And in the facts that have really been brought up in this appeal, we know that it occurred in a classroom, we know it occurred during classroom time, but I think, compellingly, there's no evidence that this spoiler was part of a classroom activity. This spoiler could not be used for educational purposes. It was in the process of being dismantled. This spoiler had been in this classroom for several months. So it was serving really no educational purpose. Well, tangentially then it takes us into a side issue, and that is how broadly do we interpret the Section 3-108A? I mean, there was testimony, was there not, that it was brought in initially to be part of a classroom activity or demonstration, correct? There was. And I think that this focus on the purpose of the spoiler does really get us away from the thrust of what our analysis should be here. As the Supreme Court set forth in Arderman, and this Court, the approach this Court used in Dover's Demoskey, really the thrust of our analysis on this 3-108 issue  Specifically, is this a negligent supervision case, or is this some other non-immunized cause of action? Would it be different if they were actually working on the boiler at that time? Let's say they brought this boiler in, the project was to put it back together, and that was going to be the class of that day for that day. We're going to put this boiler back together, and he trips over it at that time. Would your argument be different, or would it be the same? I think that depends. And what it depends on is what the cause of action asserted by the plaintiff is. If the allegation is that the teacher prevented the student from doing some kind of dangerous activity, failed to make sure that the students were safely disassembling this boiler, or something in that vein, I think that's negligent supervision. If it's just a dangerous condition existing on the property, I think that brings us into a premises allegation that is not immunized. Is the immunity driven by the complaint itself, by the claims in the complaint? I believe it is. And it's not simply that if you don't say the magic words, negligently supervised, that it's not immunized. But the language that we really see in our prior opinions, in Aardman, the Supreme Court says it's the gist of the plaintiff's complaint. In Dover, Stamovsky, this Honorable Court, said the gravamen of the plaintiff's complaint. So really what we need to look to is, I think, what the substance of the plaintiff's complaint is. Why is this complaint controlled? Following up on his question, then you could always cast, the plaintiff could always cast, every cause of action is a premises liability. What would be the point of 3-108 then? You're saying the allegation controls and can totally exclude the applicability of the statute? Is that your position? No. My position is that our analysis needs to be what duty the defendant is accused of breaching. And that is what the plaintiff would need to prove at trial. But then you're still setting the whole thing. You're eliminating the affirmative defense from the law. Because you're saying you could always cast a defective product. Something could happen in the middle of an admitted classroom demonstration, where all students were participating. And you're saying if you allege that it was a defective product, if you're alleging premises liability, then therefore it doesn't matter what was going on in the course of the classroom. You're saying what the plaintiff alleges totally controls the breach? I think it's a combination of what the plaintiff alleges in combination with what the negligence asserted is. And what the plaintiff would have to prove at trial in order to recover. I think that the Ardman case is compelling here in that this was a plaintiff that was injured during class, during a physical education class, while rollerblading. She's unquestionably being supervised. She's unquestionably part of a supervised activity during that time. Now the reason that that complaint was not immunized by Section 3-108, the Supreme Court held, is because we had an independent duty. The duty to provide safety equipment that was breached. It wasn't merely the breach, it wasn't the duty to provide supervision. And I think that in any one of these cases, obviously this is an analysis where we need to look at the complaints, look at the evidence presented, and really determine, ask ourselves, what is the grommet of this complaint? What is it that the plaintiff is alleging? If we looked at this case here, a case where the trial court also granted summary judgment on the basis that the plaintiff failed to provide notice, and there's arguments here today about an affirmative defense, whether the plaintiff should have to prove notice. In a way, these two things are inconsistent. If the plaintiff needs to prove notice, we need to prove notice because this is a premises complaint. Which is what this is. And because this is a premises complaint, and that's the negligence and the duty that's being asserted, that's why this falls outside of 3-108. It's not simply, Your Honor, that this is harmful pleading. Rather, it's what's the substance of what's being alleged. Well, let's assume that you had alleged here, hypothetically, a negligent supervision. Let's follow up on Justice Burke's question. If, in fact, as you're saying, that this boiler was there, it really was an active part of a classroom demonstration when this person tripped, what would it have to be? But it was ostensibly brought in to be part of a demonstration. But it wasn't actually, you know, happening at the moment of the injury. What would be your position? How broadly do you interpret 3-108, or how narrow? I mean, the boiler just didn't drop out of the sky. Obviously, it was brought in for some purpose, was it not? Of course it was. And I think that this Court really did wrestle with this same issue in the case of Doe v. Demofsky. In that case, this Court, you know, kind of went back and forth saying, well, of course, everything that happens in a classroom is going to have some aspect of supervision to it. And I think, to your point, of course, there is, whenever a fall in a classroom, or whenever a teacher is present, or whenever we do have a classroom activity, there is some aspect of supervision. And my position on 3-108 is simply that, in order to determine if, is that 3-108 immunizes a certain kind of conduct, and that's supervision conduct, or supervisory conduct, rather. It does not immunize activity just taking place in a certain place at a certain time. So our analysis is not simply, did this occur in a classroom? Was this part of a class? It's, what's the duty that the defendant is accused of reaching? That's the same reason in Doe v. Demofsky, when this Court was going back and forth saying, well, that was a sexual abuse case. Saying, well, there was some failure to supervise this teacher. This does touch on some supervision issues. But the final result was that 3-108 did not apply. And the reason that it did not apply is because the grovelment of the plaintiff's complaint did not allege a failure to supervise. Instead, it alleged a failure to report. And this Court held that, because that was a separate and a distinct duty, a separate and distinct allegation of negligence, that that's really the thrust of our analysis. And that is why, even though that occurred in a school, admittedly with some supervision going on, that is why in that case, 3-108 did not apply. And there really is the same analysis that was used by the Fifth District in CAPS. This is a graduation ceremony. This is a student at the graduation ceremony. Of course, students are always going to be supervised to some extent when they're at graduation. But again, the Court goes to what was the thrust of the plaintiff's complaint and what was really the grovelment of that plaintiff's complaint. And aside from the one failure to supervise allegation, which was stricken, the rest of that complaint was ordinary premises allegations, and specifically giving rise to the duty of a local public entity to maintain its property in a reasonably safe manner. That duty is found within the Tort Immunity Act. And when that duty is what's alleged, we need to focus on that and that conduct is not immunized. Let me ask you this. What about Section 3-102A of the Tort Immunity Act? When you're taking the position you're not required to show a notice, actual or constructive? What's your position on that part of it? Yes. Now, read together, it's not so much that this is sometimes talked as an exception. You don't have to show notice. But really what it is is when you can trace to the defendant's conduct, that is in itself proving notice. Here the evidence shows that Bob Clark was constructing the spoiler, or was deconstructing the spoiler rather, and that this was occurring around the time of the accident. He's really the only person who there's any evidence showing that he has reason to be working on the spoiler because it couldn't be used for its educational purposes. And so if he leaves the rail out, he either knows he left it out or should have known because he himself caused that defect. Well, I mean, is that a reasonable inference or is that an assumption or speculation? I mean, you've got a classroom here that it's a lab, so apparently people are in and out of it a lot. And, you know, if something is laying around, people are going to pick it up and look at it. So, I mean, how do we know that the student didn't come in and pick up this rod and take a look at it and set it down, and then two minutes later your client comes by? That's a fair question. And I think that this case is similar to the Harding case. In the Harding case, the cap was left off on a sewer grate, and there was some evidence that the public entity had been out to that same area in the days prior. But, of course, the plaintiff couldn't exclude the fact that someone else could have come and done something with the sewer grate. However, because it was shown that that person was there and actually working on that sewer grate around the time of the accident, I think that moves us into the realm of a reasonable inference. The same is here with Mr. Clark. Because there's evidence that he is actually working on this boiler around the time of the accident, involved in taking it apart, I think we move more towards the reasonable, it's a reasonable inference that he left it out, given that there's no reason anyone else to touch this boiler, and I don't think it's fatal that we can't absolutely rule out any other possibility. I think we are in that inference realm. Do you agree? I'm sorry. No, you go ahead. Do you agree that you could forfeit a debt claim that you're asking us to look at on a plain error? Yes. Okay. And in the event that, and I'm sorry. Well, I was going to ask, when you say he was working on this around the time, how far does that extend? Do we really know when he was working on it, other than it was being deconstructed over a period of time? I don't think the record establishes exactly how long prior. And we do know that the lab rat, his term for himself, hadn't been there for a couple of days, and for whatever reason, maybe holiday, maybe weekend. So he says it wasn't, he never noticed it that way until the person fell. So doesn't that take a lot of your reasonable inference that something else had happened in the interim since the last person who was most likely to see it said he hadn't noticed it two to three days before? It may, but I think that Mr. Brock's testimony is one contradictory and gives rise to multiple inferences. And to reach that conclusion, I think we have to take some of his testimony and read it in the light that's more favorable to the defendant here or the movement. Mr. Brock was asked the question, was it there when you got there about an hour before the fall? And his answer is it would have been there for several days. Was he talking about the rod or was he talking about the boy? He was talking about the rod. I do want to direct your attention to page sub 2C26, line 12. This question is asked, the rod and the hanger? Question mark. Answer, yes. I had probably seen them, but somebody, if it wasn't out all the time, it had not been loose and fallen out. Also in testimony, he says later in that same line of questioning, he says that he's talking, he references the fact that he's talking about the hanger. I know that this was brought up in defendant's brief. I knew that maybe he was talking about the pallets. But the record demonstrates that the pallets had been there for weeks or months prior to this fall. So Mr. Brock talking about the pallet itself being there for a few days, it doesn't make a lot of sense. Did he also not say that he had not been in the classroom for most of the few days and prior to then was the plaintiff tripped and the rod was not protruding from the pallet when he was last there? So isn't the inference to be drawn from there, if we're drawing reasonable inferences, that if it had been a couple of days before, it was not protruding? Yes. And what this shows is that Brock has inconsistent testimony. I would agree with you there. I think that's a fair, fair provision. It doesn't really prove a point necessarily one way or the other. But let me ask you this question. When you talk about reasonable inferences to be drawn, how do you respond to the argument that you're sort of inviting us to speculate and fill in the gaps here? How is this not speculation? When it was there, when it was not there, whose burden is that? Well, on the Bob Clark, I can see that there's a bit of an inference I'm asking you to draw there. I don't agree that Mr. Brock's testimony is asking this Court to speculate or to draw an inference. These are substantive admissions that Mr. Brock made. He is the lab rat. He has the most knowledge of this lab, the comings and goings, on what's been— and he says on multiple occasions it would have existed for several days. The record, if you look at his exact quotes, I don't think bears out he's saying it's a maximum of a few days. He says it's been there for a few days. Even—and I really want to highlight this. When his own lawyer is trying to clean this up at the end of the deposition, he's asked, okay, you don't know how long prior to the time you observed Mr. Vasili falling, as you said, dislodged. And he says again, it would be a few days. This is Brock not asking us to speculate. These are statements he made where he's telling us that this rod had been out for a few days. Now, I understand that there are—no, I'll wrap up. Thank you, Mr. Pustay. We have a chance to address this on the panel. Absolutely. Thank you. Thank you. Mr. Faley, on behalf of the Pele, you may proceed. May it please the Court, my name is Michael J. Faley. I represent the Pele Defendant College DuPage by COD. We are the defendants in this case. This Court should affirm the trial court's grand summary judgment in favor of COD and against plaintiff. The Court here can affirm on any basis appearing in the record. As COD is a public educational institution, the Tort Immunity Act provides two independent bases for this Court to affirm. First, the trial court correctly found that as a result of the incident occurring within a supervised classroom and concerned what the instructor did or didn't do with respect to oversight and management of a classroom teaching aid, the boiler, that section 3-108 of the Illinois Tort Immunity Act bars negligence liability for these supervisory activities. Does everything that happens in a classroom, is that immunized? If it happens during the class, it's supervised by a teacher? If it's supervised by a teacher, if it involves a student as it does here, if it involves classroom, if it involves a classroom implement teaching tool as it does here, if it involves something occurring during class time as it does here, yes, I believe it's covered as a supervised activity. Why did the Supreme Court rule otherwise in Artiman? They didn't. In Artiman, the Artiman case was very specific. They said that if you have, so factually background of Artiman. Artiman involved policy set up by the school board that when kids were in gym, they should have an option to rollerblade. As part of that policy, they forgot to include any part of it that the kids should also be provided safety equipment. So when you read Artiman, what was really at issue was not what happened at the actual point of the incident, the fall of who was watching them and what was happening in that specific gym class. What was involved was the actual policy at issue that had been adopted by the school board that we should provide kids with rollerblades but not provide them with the safety equipment to keep them safe. And when you read Artiman, the Supreme Court at the beginning of the opinion, it's very clear that what they're talking about there is a series, is a line of decisions that had come before that where they were talking about the liability flowing to a school board for a policy from which that policy flows an injury to a student. And that's exactly what was, that was exactly what was at issue in Artiman. So an analogy would be a shop class where they're using an acetylene torch. The policy was, and admittedly during the course of a supervised activity, the school or whatever, as wild as this may seem, would have chosen not to have a visor or something. So that's what you're saying. It's not that, it doesn't turn on whether or not it's a supervised activity. It turns on this policy of not providing safety equipment. That was the focus of Artiman, about a specific policy and whether that injury flowed from that specific policy and whether liability could then thereby flow from it. Let me ask you a more subtle question. I think this is the underlying theme here. Even if we were to take the position broadly this was intended to be at least a supervised activity, and we were touching on this, at the time when this thing happened, when the injury happened, this boiler was not being used for any demonstration whatsoever. The decision had been made that this was not going to be used. So how do you respond to the argument that even if it was intended to be at the time of the injury, it wasn't being used as any part of a classroom demonstration? Sure. So the whole purpose of it existing in the classroom, and that's undisputed within the record here, was that it was in the classroom as a teaching aid. Intended to be initially. At no point did it change its character. There's no evidence that at any point it changed from anything other than sitting on that pallet for the sole purpose of it being in that classroom as a teaching aid. Assuming that's true, how is it used as part of a demonstration in the classroom? So the Illinois Supreme Court for Immunity Act makes clear that the immunity for supervision applies to any activity occurring on or any use of any public property. So you don't have, so there's no requirement that you have to be engaged using that implement or using that tool in, for instance, the middle of a demonstration when the accident occurs. That's just not a requirement. But what if the plane had tripped over a janitor's bucket that was left in the walkway? Well, for one, he didn't. But as to the hypothetical, so if you have somebody who's in the class, the instructor, he's responsible, in this case, Mr. Brock. He's the lab rat. He's responsible for overseeing the class. He's responsible for overseeing the kids, the students. He's responsible for the environment. So if you have something in the walkway that he's in charge of this, he's in charge of this environment, and he's responsible for moving it out of the way, that is a supervisor reactivity, I would say. And if that was the case here, if we had a bucket on the floor but the rest of the facts were still in place, he would still be a supervisor. Why did CAFs go the other way when it came to the railing and the drop-off and all that? I mean, they clearly said they're supervising them as they're leaving, but they're not supervising the premises. I mean, the premises have an issue. The plaintiff here is alleging the premises had an issue. We're not supervising the premises. We're supervising the activities in CAFs as the people are leaving the building. So a couple of distinguishing points with CAFs. One, CAFs didn't involve a student. CAFs involved a spectator at the graduation ceremony. So if it was a student, it would have been different. If it was a student during a play. In my view, it's a relevant factor that moves this case even further away from CAFs, the fact that it involved a student during class time, an instructor, and it involved a teaching tool, a classroom implement. All of those, all of the factors here move this case miles away from where CAFs was. So CAFs, there's always a tension in some of these kind of cases. Well, is this an issue of general liability, of general premise maintenance, or is it a supervisory activity, right? There's that tension that the courts sometimes grapple with. And so in the CAFs case, the CAFs case is you have a matter of general maintenance where there's a ramp, a spectator going to the graduation, apparently falls off it. It says, well, there was no, your janitor or somebody should have put a railing up there. Now, there was nothing about supervision. It was just there. The condition existed. Here, it's completely distinguishable. All that's at issue here. The premise, the gist of their case, as counsel was saying, involves Mr. Brock. There's nothing beyond that. There's nothing in this case about what the janitor did or didn't do. There's nothing in this case about what the maintenance people did or didn't do. This case solely revolves around what a teacher did, a teacher who was supervising a classroom setting, a lab setting, did or didn't do with respect to a teaching tool, a teaching aid in that classroom. Let me ask you this. At the time the plaintiff was injured, was there an ongoing activity, some type of a supervising activity involving this boiler? Can you repeat the question again? At the time the plaintiff was injured, was there some activity involving this boiler? Was the boiler being used in any manner at all at the time the plaintiff tripped? No, it was not. Class was starting. He was coming in. The boiler had been placed in the classroom. So there's lots of equipment in this lab. And at various points during the course of the class, they do demonstrations. They move over here to this boiler, or they move over here to this furnace, and let's work on this and see how these things work. Was there any evidence the boiler was ever intended to be used for any lesson? Yes, sir. When was that? I thought the decision was made it was not going to be used. It was moved specifically into this classroom for the purpose. It was an old boiler that they had used at COD, and they had the idea of saying let's take this old boiler. Initially, it's clear. I don't think your opponent would dispute. Initially, yes, it was certainly brought in there for the intention of using it for part of the classroom instruction and demonstration. When was the decision made not to use it? The decision was never specifically made that they weren't going to ever use this. It was never said, there was never a specific decision made, this thing will never be used. One of the instructors who testified in the case said that at some point they wanted to use it, but it turned out some of the equipment was missing, so they ultimately couldn't use it. The record doesn't reflect there's no testimony as to when that decision was made? No. It was found out that at some point this boiler was there. There was the intention to move it onto this pallet, move it off to the side, with the intention of using it as a maid in the classroom. At some point it was found that the equipment that they needed to put on the demonstrations that they wanted, they simply didn't have it. But in my view, it didn't change the nature of the equipment. The equipment was there for the sole purpose of being used. It was there for the intended purpose of being used as part of the classroom supervised activity when the plane was stopped. Correct. That's your characterization. Correct. And I think that's, there's no record, there's no background to that. How did the cases get support there? Because you're distinguishing here. Clearly the evidence has indicated, and you've acknowledged it, that there was no actual demonstration going on when the plane did trip. Yes. So you're saying the fact that clearly it was intended to be a part of a supervised activity, even though it was never used, carries the day whether or not there's ever any demonstration going on at the time of the injury. That has to be your position, right? That is my position. And what case law supports that position? Well, the statute itself supports that decision. The statute itself says that it can be an activity or supervising an activity or the use of public property. So that's the point. It doesn't have to be a demonstration. It can be something involving the actual physical property itself. The Hill case, for instance, and the White case, which I've been two-sided in our brief, both say that the oversight and management of a classroom setting involves supervisory activities under 3-108. So if something from the ceiling fell and hit a student in the head during a classroom, 3-108 carries the day? If it's something that involves supervision from an individual. So here we have an instructor. So let's give you some ideas of what's involved in supervision. The cases speak to, these are just some of the types of verbs that go into what it means to supervise. Any coordination, any direction, any oversight, any implementation, any management, any superintendents, any regulation. So these are some of the kind of verbs that go into. So the answer to this question would be if a wall fell on somebody, even if you're in the middle of a classroom demonstration, you're not saying that falls under this, are you? I am not. I don't believe Mr. Brock would say if he had been asked that question. I don't think that he would have testified that he had any responsibility for overseeing the structural integrity of the walls. So the answer to that is no. I guess the issue is what is the object of it? When you're talking about management and all these words that you use, what is the object of that? Are we supervising the people? Are we supervising the people's activity? Or are we supervising things in the room? You're doing more than just supervising people. So that's one. So that's clear, for instance, in the Epstein, the Illinois Supreme Court case in Epstein. They said when you're dealing with, that dealt with construction activities, whether or not there was a responsibility for supervision when a worker brought a claim under the Structural Work Act. And the court in that case, the 1997 Illinois Supreme Court case, said it can be both the activity or the actual use of some physical property or some physical condition on the property. The use by the person that got hurt. No, it doesn't have to be used by the person that got hurt. Okay, so here they're not using that thing that hurt the plaintiff. But because, again, I'm grappling. You said there was tension there, and this is the tension. Yeah, there was tension. What is being supervised?  What is being supervised here, right, here we have an instructor. He's overseeing Mr. Brock. He's overseeing all of the things that are an issue here. So I understand there's a tension in these cases. But let's look at what's at issue here. I think this is probably one of the more compelling types of cases that you'll see on this. You have an instructor. You have him. It's undisputed that he's overseeing the classroom. It's undisputed that he's overseeing the students who are in the classroom. It's undisputed that he is overseeing the implements or the boilers or the equipment that are in the classroom. You have the accident occurring involving the student, and you have it occurring during class time. I don't understand that. I don't want to dig up on it. But we gave felons attorney additional time. What is your position on 3-102A in light of the fact that Plaintiff is arguing that it's not required to show that COD had notice of this protruding rack? Obviously, you don't agree with that. So tell us your summary of why 3-102A carries the day on the notice issue. So I think 3-102 is even a similar issue. 3-102 by statute, the actual words, the actual statute, 3-102 itself, requires the public entity to keep reasonably safe premises, but it also requires that there be actual or constructive notice and reasonable time to fix or protect against whatever the condition may be, the unreasonably dangerous condition. So by statute, it requires explicit knowledge or constructive knowledge. Is there any evidence here, either way, of whether or not the COD was on notice of actual or constructive notice of this? So the trial court found that there was no evidence of actual notice based on Mr. Brock's deposition. He said it's very explicit when you read his deposition. He didn't know it was there. He didn't know this hanger pipe was hanging out to the pathway. He didn't know it existed until Plaintiff fell over the hanger pipe. So that's clear when you read his deposition. He says repeatedly, no, no, no, I didn't know that. That's not actual notice. What about constructive? So with respect to constructive notice, Plaintiffs have taken two points on that, and we have, as you pointed out in your questioning of counsel, they have forfeited the idea with respect to not having to prove notice, that they didn't have to prove it. They waived that argument. They never brought up that argument to Judge Kleeman. They were required to. It's been forfeited. They acknowledge in their brief that it's been raised for the first time. Can plain error apply in civil cases? It can, but there's no compelling basis here for plain error. It was never brought up, this idea about Bob Clark. Bob Clark is mentioned once in a single deposition. There's no evidence in the record as to what Bob Clark did. There's no evidence when he did it. And Mr. Brock explicitly said that when I looked at it, when I was the last time I was in the classroom, it looked fine. Thank you, Mr. Fairley. I gave him an extra few minutes, so I want to be fair to both sides. Thank you, Mr. Fairley. I would simply say, just to make it clear, Mr. Clark's deposition was never taken. So there is no record of what Mr. Clark did or didn't do. Thank you. I would request that you affirm on both bases, but I think both bases of 3-108 and 3-102 provide equally compelling reasons to affirm the trial court's grant of summary judgments in favor of COD and against plaintiff. Thank you very much. Thank you, Mr. Fairley. Mr. Pressley, you may press the record button. Before you do, I want to ask, what, in fact, would you have Mr. Brock do to prevent this? To remedy the dangerous condition. Simply put the hanger, store the hanger safely on the pallet. This is a lab. It's not your regular classroom, I assume. I haven't been in it, but I've seen a lab once or twice. We don't have seats in nice order. What's he supposed to do before the students come in? Or what's that premise supposed to look like before those students come in? It's supposed to have a clear walkway without tripping hazards. In this case, Mr. Brock admits that he believes that the hanger was a tripping hazard. This hanger is located within the walkway. It's located 10 to 15 feet into the room once you walk in the door. And once you walk into the door, you have to turn. The door is recessed, so it's not visible right away. And Mr. Brock tells us himself that if I had seen it, I would have picked it up. I think that these facts set forth exactly what should have been done. And I would like to address the thought that there is no constructive notice in this case. The facts referenced that it's in the classroom, 10 to 15 feet within the doorway, in a walkway. And that Mr. Brock admits that this rod is conspicuous if one is looking forward. And he admits that the rod was likely protruding for several days before the fall. Taken together, these facts are sufficient for a jury to find constructive notice. What if we were to find that the trial court was correct? In reading the deposition of Mr. Brock in its totality, he never said what your argument is. Does your constructive notice argument fail? It does not. And I think that—and may I ask for a clarification? I'm asking specifically the fact that it was protruding for several days. For several days, right. Okay. Because the trial judge didn't agree with you on that point. Yes. And I think when we're looking at it through a constructive notice lens, there's a little bit of difference of analysis as to the scope of the admission that was made. Even if he didn't know for certain, like I saw it three days ago and came back three days later, and it was still like that. And Mr. Brock is the lab rat who is most familiar with the comings and goings within the lab, who is most familiar with the equipment in the lab. And the fact that he says it, it's not—this isn't just a slip that he says once. He says it repeatedly in his deposition. It existed for several days prior to this accident. Well, didn't he also say that it wasn't like that when I left? I left a couple days ago. It wasn't like that when I left. If it had been like that, I would have moved out of the way. And when I came back, your client tripped on it, and I had noticed it until after he had tripped. Didn't he say that also in his deposition? He did say that also. And that is why I—it's inconsistent testimony. And when a witness gives inconsistent testimony like this, my position is that a jury has to decide what the facts are and give meaning to his testimony. If we have these multiple reasonable constructions of his statements, one which would give us evidence of notice and one which does not, I respectfully submit that it's error to choose the one that benefits—that favors the defendant, to read the deposition and say, this is what we think he meant, notwithstanding these other statements. My hypothetical hasn't really been answered yet. And that is that—I mean, the trial judge said that—he was going along with what I just said, basically, that Mr. Brock said it wasn't there, and then when I came back, I didn't see it until after he fell. So the trial judge said that. I mean, he based his ruling in part on that. Let's assume for a moment that we agree with that. Because I noticed in your actual notice argument, you rely on that statement of Brock. And in your constructive notice argument, and here today in constructive notice, you're relying on that same statement. My question is very simply this. If we agree with the trial judge unconditionally, does your constructive notice argument fail? It does not. And the reason is because Mr. Brock was within the classroom an hour before the fall. This rod is conspicuous, and it's right by the entrance. So even if it doesn't exist for several days before the fall, Mr. Brock had, as being the first person in the lab, being present on the scene immediately prior to the accident for up to an hour before this fall. We're talking about something that's inside of a room. I think that also could have been moved by someone moments before also. So you have to prove notice. You agree with that, correct? At trial, we have to prove notice. At summary judgment, I mean, you have to show notice. I mean, there has to be some evidence of notice. Yes. And you also agree that there has to be, under the case law, some evidence of the length of time that the dangerous condition was in existence. Yes. Okay. Without Brock's testimony, what do you have as far as the length of time that the dangerous condition was in existence? Without Brock's testimony, we have – all we have is the testimony of Mr. Janich saying that Mr. Clark was in the process of dismantling this. Okay. So it's sort of a two-edged sword, because if you're going to tell us on the one part you've got to believe Brock, but then you turn around and say Brock is inconsistent, I mean, can it be believable and inconsistent all at the same time? I think that – It's a fair question, and I think that when we have a witness like this who gives inconsistent statements, we have to adopt the construction that most favors the non-movement. Here, Mr. Brock, by giving his inconsistent statements, some of which are admissions, some of which recant and say, wait, never mind, I never knew about it. I believe that creates a question of fact and jury history. Well, then can't we use – or can't the trial judge in this case use the fact that if it is conspicuous, Mr. Brock either came in through a window and didn't have to go past there, probably unlikely, or he walked past it and did not see it because it was not there? That is one inference that could be drawn, but another inference that could be drawn was that he didn't see it because he didn't look. Well, according to you, if it was there, he would have dripped. I mean, it was out in the walkway. Right. This walkway is – there's a width to this walkway. I'm not – my position – I'm not saying that this is a position where you have to either step over this rod or not or trip over it. You know, this is a lab where there's a walkway, and you kind of walk between tables and various pallets, and this was protruding into a question of it. Anything else? No. All right. Thank you very much, Mr. Gorsuch. Thank you. All right. At this time, I'd like to thank both counsel sincerely for the quality of their arguments here in this interesting case. The matter will, of course, be taken under advisement, and a written decision will issue in due course. Mr. Kennedy.